IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| ANTHONY LEE, <br><br> *Plaintiff,* <br><br> v. <br><br> CITY OF CHARLOTTE, KENNETH KLUDY, *in his individual and official capacities*, and DEVAN WILSON, *in his individual and official capacities.* <br><br> *Defendants.* | **COMPLAINT** <br><br> (Jury Trial Demanded) |

**NOW COMES** Plaintiff Anthony Lee, by and through undersigned counsel, complaining of the acts and omissions of Defendants, requesting a jury trial, and alleging the following:

## NATURE OF THE CASE

1. On November 13, 2023, Defendants arrested Mr. Lee without probable cause.

2. Defendants knew or should have known that their sole justification for arresting Mr. Lee—their only stated basis for probable cause—was well-established "junk science," something that their own department and legal counsel had previously advised was not a sufficient legal basis to arrest someone and deprive them of their liberty.

3. Mr. Lee and his companion Christina Pierre were waiting at a bus stop near South Tryon Street and Arrowood Road in Charlotte when officers of the Charlotte-Mecklenburg Police Department (CMPD) approached them. Mr. Lee and Ms. Pierre had just finished

working their respective shifts at a nearby Bojangles restaurant. At that moment, they were doing nothing more than smoking a legally purchased hemp cigarette. Both Mr. Lee and Ms. Pierre are Black.

4.   Defendants alleged that they smelled unlawful marijuana while driving by the bus stop in their patrol vehicle, which led them to pull into a nearby parking lot and approach Mr. Lee and Ms. Pierre on foot.

5.   Despite being told clearly and unequivocally that the material being smoked was lawfully purchased and not marijuana, Defendants immediately placed Mr. Lee under arrest for the possession of marijuana. Defendants did this despite not being able to tell with any degree of certainty that the cigarette in question was anything but legal.

6.   Defendants had no legal basis to arrest Mr. Lee.

7.   A government may not lawfully authorize the arrest and physical assault of its citizens for conduct that is lawful. Mr. Lee brings this action to vindicate that principle and to obtain redress for the injuries he suffered.

8.   Mr. Lee's arrest is not an isolated incident. It reflects a well-established pattern whereby police target Black people based on their race rather than reasonable suspicion or probable cause. CMPD's data show that Black people are more likely to be stopped, detained, and arrested for marijuana possession than white people. Indeed, while people of all races consume hemp and marijuana, which are the same plant and cannot be told apart by sight or smell, CMPD's data show that over 81% of people arrested for misdemeanor marijuana possession alone in Charlotte between 2016 and 2023 are Black. This is one of the various ways in which discriminatory policing practices ensnare Black people in the criminal legal

2

system as a result of engaging in a lawful activity (here, smoking legal hemp) or a minor offense (e.g., simple possession of marijuana).

## JURISDICTION

9.      This Court has original subject-matter jurisdiction over Mr. Lee's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343(a) because the claims arise under the laws of the United States and seek redress for rights guaranteed by the United States Constitution that were deprived under color of state law.

10.     This Court has supplemental jurisdiction over Mr. Lee's state-law claims pursuant to 28 U.S.C. § 1367. These claims derive from the same nucleus of operative facts and are part of the same case or controversy that gives rise to the federal claims.

## VENUE

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because (i) a substantial part of the events and omissions giving rise to the claims occurred in this District, and (ii) Defendant City of Charlotte resides in this District and, upon information and belief, Defendants Wilson and Kludy are both North Carolina residents.

## PARTIES

12.     Anthony Lee ("Mr. Lee" or "Plaintiff") is a previous resident of Mecklenburg County, North Carolina, currently residing in New Jersey.

13.     Upon information and belief, Defendant Devan Wilson ("Officer Wilson") is a resident of Mecklenburg County, North Carolina.

3

14. At the time of the events alleged herein, Officer Wilson was a sworn police officer with the Charlotte-Mecklenburg Police Department ("CMPD"). Officer Wilson's employment with CMPD began on June 22, 2020.

15. Officer Wilson is sued in his individual and official capacities as to the state law claims for conduct that was malicious and corrupt. He is therefore not entitled to any public official immunity or governmental immunity that might otherwise shield him from liability. As for Plaintiff's claims under 42 U.S.C. § 1983, Officer Wilson is sued in his individual capacity for conduct taken under color of state law in violation of the United States Constitution, and he is not entitled to any qualified immunity or other immunity that might otherwise shield him from liability. At all times relevant herein, Officer Wilson acted under the color of state law.

16. Upon information and belief, Defendant Kenneth Kludy ("Officer Kludy") is a resident of Mecklenburg County, North Carolina.

17. At the time of the events alleged herein, Officer Kludy was a sworn police officer with the Charlotte-Mecklenburg Police Department ("CMPD"). Officer Kludy's employment with CMPD began on February 24, 2020.

18. Officer Kludy is sued in his individual and official capacities as to the state law claims for conduct that was malicious and corrupt. He is therefore not entitled to any public official immunity or governmental immunity that might otherwise shield him from liability. As for Plaintiff's claims under 42 U.S.C. § 1983, Officer Kludy is sued in his individual capacity for conduct taken under color of state law in violation of the United States Constitution, and he is not entitled to any qualified immunity or other immunity that might otherwise shield him from liability. At all times relevant herein, Officer Kludy acted under the color of state law.

19.     Defendant City of Charlotte ("Charlotte" or "City") was, at all times relevant herein, a municipal corporation duly organized and existing under the laws of North Carolina that was acting under the laws of North Carolina. Defendant Charlotte hired, trained, and supervised Officer Wilson, Officer Kludy, Officer Pistone, and others to carry out their duties on behalf of the City as police officers with the Charlotte-Mecklenburg Police Department ("CMPD"). Charlotte is sued under state law claims for the conduct of its employees for which the City is liable under *respondeat superior*. Charlotte is also sued directly for its own conduct under 42 U.S.C. § 1983 pursuant to *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). Charlotte has waived immunity for liability for the state law claims by the purchase of commercial liability insurance. Accordingly, Charlotte has waived any claim of governmental and sovereign immunity with respect to this action. Charlotte is not immune from the federal law claims.

## FACTUAL BACKGROUND
### Hemp, Marijuana, and Policing

20.     Hemp and marijuana belong to the same species: *Cannabis sativa*.

21.     The defining difference between hemp and marijuana is the concentration of delta-9 tetrahydrocannabinol ("delta-9 THC"), the psychoactive component of marijuana.

22.     Under both federal and North Carolina law, hemp must contain no more than 0.3% concentration of delta-9 THC.

23.     Tetrahydrocannabinol acid ("THCA") is a non-intoxicating acid naturally produced in raw cannabis buds. It does not have psychoactive qualities when consumed in its unprocessed form.

24.     In October 2015, North Carolina enacted the Industrial Hemp Act, N.C. Gen. Stat. §§ 106-568.50 to 106-568.57 (S.L. 2015-299, Section 1), which established a pilot program to regulate and study industrial hemp cultivation. The legislation also decriminalized industrial hemp production and use in North Carolina.

25.     On December 20, 2018, U.S. President Donald J. Trump signed the Agriculture Improvement Act of 2018 ("2018 Farm Bill"), Pub. L. No. 115-334, §§ 10113-10114, 132 Stat. 4490, 4908-14 (codified at 7 U.S.C.S. §§ 1639o-1639s), which authorized the production of hemp and removed hemp and hemp seeds from the federal Drug Enforcement Agency's (DEA) schedule of Controlled Substances. The bill took effect on January 1, 2019.

26.     In 2019, the North Carolina State Bureau of Investigation ("NC SBI") published a memorandum entitled "Industrial Hemp/CBD Issues" (hereinafter "NC SBI Memo"). Ex. 1, NC SBI Memo.

27.     Established in 1937, the NC SBI conducts criminal investigations across the state of North Carolina. The NC SBI has original jurisdiction in drug investigations, among other areas.

28.     NC SBI's five-page memorandum assessed the impact that The Industrial Hemp Act was having on the regulation of hemp and considered the impact that hemp legalization would have on law enforcement activity. *Id.*

29.     NC SBI wrote, "There is no easy way for law enforcement to distinguish between industrial hemp and marijuana. There is currently no field test which distinguishes the difference." Further, NC SBI noted that "[h]emp and marijuana look the same and have the same odor, both unburned and burned." *Id.* at 3.

30. NC SBI asserted that the legalization of hemp made it impossible for law enforcement to develop probable cause for arrest, seizure of the item, or probable cause for a search warrant based on "the appearance of marijuana or the odor of marijuana:"

> Hemp and marijuana look the same and have the same odor, both unburned and burned. This makes it impossible for law enforcement to use the appearance of marijuana or the odor of marijuana to develop probable cause for arrest, seizure of the item, or probable cause for a search warrant. In order for a law enforcement officer to seize an item to have it analyzed, the officer must have probable cause that the item being seized is evidence of a crime. The proposed legislation makes possession of hemp in any form legal. Therefore, in the future when a law enforcement officer encounters plant material that looks and smells like marijuana, he/she will no longer have probable cause to seize and analyze the item because the probable cause to believe it is evidence of a crime will no longer exist since the item could be legal hemp. Police narcotics K9's cannot tell the difference between hemp and marijuana because the K9's are trained to detect THC which is present in both plants. Law enforcement officers cannot distinguish between paraphernalia used to smoke marijuana and paraphernalia used to smoke hemp for the same reasons. The inability for law enforcement to distinguish the difference between hemp and marijuana is problematic in all marijuana prosecutions, from small amounts to trafficking amounts of plant material. There is at least one District Attorney's Office in NC which is currently not prosecuting marijuana cases due to the inability of law enforcement to distinguish the difference between hemp and marijuana.

Ex. 1, NC SBI Memo, at 3.

31. On November 18, 2020, Mecklenburg County District Attorney Spencer Merriweather formally announced that his office would no longer prosecute simple drug possession cases, including the charge of simple possession of marijuana.

32. In the summer of 2021, the City of Charlotte, through CMPD's Police Attorney's Office, published its "CMPD POLICE LAW BULLETIN: A Police Legal Newsletter," Volume 38, Issue 4 (hereinafter "CMPD Police Law Bulletin, Summer 2021"). Ex. 2, CMPD Law Bulletin, Summer 2021.

7

33. Upon information and belief, the Police Law Bulletins published by CMPD's Police Attorney's Office are distributed to all CMPD personnel, along with other City of Charlotte Policies.[1]

34. According to the City of Charlotte, "CMPD personnel are responsible for reading the directives and law bulletins" as they are issued.

35. Among other things, the CMPD Police Law Bulletin, Summer 2021, discussed *State v. Parker*, 860 S.E.2d 21, a 2021 decision from the North Carolina Court of Appeals. The discussion noted that the defendant in *Parker* challenged the denial of his motion to suppress on multiple grounds, "including the argument that the trial court erred by failing to address the issue of the indistinguishable odors of marijuana and legalized hemp." Ex. 2, CMPD Law Bulletin, Summer 2021, at 4.

36. The CMPD Police Law Bulletin, Summer 2021, noted that the appellate court affirmed the trial court's finding of probable cause in *Parker* "because the Officer had more than just the odor of marijuana. [The Court of Appeals] concluded that here there were three pieces of evidence which supported probable cause to search the defendant's vehicle: (1) the odor of what the Officer believed to be burnt marijuana coming from the vehicle; (2) the passenger's admission he had recently smoked marijuana; and, (3) the partially smoked marijuana cigarette the passenger pulled from his sock. This combination of factors was sufficient to establish probable cause to justify the warrantless search of the defendant's vehicle." *Id.* at 5.

---

[1] *See CMPD Directives*, CITY OF CHARLOTTE, at 1, www.charlottenc.gov/files/assets/police/v/67/documents/directives/cmpddirectives.pdf [https://perma.cc/CZ4B-D2NQ] (last visited July 13, 2026).

37. The CMPD Police Law Bulletin, Summer 2021, further advised that "[a]dditional information concerning odor/sight of marijuana and the 'plus' factors to establish probable cause is discussed further in the Reminders section which follows." *Id.*

38. On page six of the CMPD Police Law Bulletin, Summer 2021, the Police Attorney's Office advised CMPD officers as follows:

> Due to the legalization of hemp and hemp extract (cannabidiol (CBD)) products in North Carolina and the fact that hemp, CBD and marijuana cannot be distinguished from one another without chemical analysis, Officers will need additional evidence beyond the sight or smell of marijuana to establish probable cause (PC). Hemp and hemp extract can contain up to 0.3% THC and 0.9% THC respectively, and our currently available testing only detects the presence of THC, not the amount.

*Id.* at 6.

39. In its legal bulletin, the Police Attorney's Office reiterated "PC for Marijuana = Odor/Sight 'Plus'" before listing several examples of what the necessary "plus" factor might include (e.g., suspect admissions, suspect's behavior, etc.). *Id.*

40. As noted in the CMPD Police Law Bulletin, Summer 2021, at that time, CMPD's available testing only detected the presence of THC, not the amount. *Id.*

41. On June 30, 2022, North Carolina Session Law 2022-32 went into effect. The law was entitled, "AN ACT TO CONFORM THE HEMP LAWS WITH FEDERAL LAW BY PERMANENTLY EXCLUDING HEMP FROM THE STATE CONTROLLED SUBSTANCES ACT." Among other things, it amended N.C. Gen. Stat. § 90-87 to permanently exclude hemp and hemp products from the North Carolina Controlled Substances Act, bringing state law in line with the 2018 Farm Bill.

9

42.     The 2022 law also amended the definition of "Marijuana" in the North Carolina Controlled Substances Act to "not include Hemp or Hemp Products." N.C. Gen. Stat. § 90-87(16).

43.     On November 13, 2023, under the laws of North Carolina, an individual was permitted to openly possess and smoke hemp.

### The City of Charlotte's Response to Hemp Legalization

44.     As of December 20, 2018, hemp was no longer a controlled substance under federal law.

45.     As of 2019, law enforcement agencies across North Carolina, including CMPD, were alerted to the fact that it was "impossible for law enforcement to use the appearance of marijuana or the odor of marijuana to develop probable cause for arrest, seizure of the item, or probable cause for a search warrant." Ex. 1, NC SBI Memo, at 3.

46.     By the summer of 2021, CMPD had been advised by its legal counsel that "[o]fficers will need additional evidence beyond the sight or smell of marijuana to establish probable cause." Ex. 2, CMPD Law Bulletin, Summer 2021, at 6.

47.     As of June 30, 2022, hemp was no longer a controlled substance under North Carolina state law.

48.     Despite the aforementioned legislative changes, guidance from NC SBI, and guidance from their own legal counsel, CMPD continued to use the *mere odor* of something that may have smelled like marijuana as the only justification to stop, seize, search, and/or arrest people in Charlotte, North Carolina, up to and including on November 13, 2023.

49.     Despite the aforementioned legislative changes, guidance from NC SBI, and guidance from their own legal counsel, CMPD continued to use the *mere sight* of something

that may have looked like marijuana as the only justification to stop, seize, search, and/or arrest people in Charlotte, North Carolina, up to and including on November 13, 2023.

50. Prior to November 13, 2023, as a result of the aforementioned legislative changes, guidance from NC SBI, and guidance from their own legal counsel, CMPD officers, including Officer Wilson and Officer Kludy, knew or should have known that they could not distinguish if someone is smoking marijuana or hemp based on mere odor or sight alone.

51. Prior to November 13, 2023, as a result of the aforementioned legislative changes, guidance from NC SBI, and guidance from their own legal counsel, CMPD officers, including Officer Wilson and Officer Kludy, knew or should have known that CMPD did not have a field test that could distinguish if a substance was marijuana or hemp.

52. Prior to November 13, 2023, as a result of the aforementioned legislative changes, guidance from NC SBI, and guidance from their own legal counsel, CMPD officers, including Officer Wilson and Officer Kludy, knew or should have known that CMPD did not have any testing instruments available that could distinguish if a substance was marijuana or hemp.

53. Based on the aforementioned legislative changes, guidance from NC SBI, and/or guidance from their own legal counsel, the City of Charlotte was aware that the actions of its CMPD officers were being challenged in Mecklenburg County District and Superior Courts with respect to officers' assertions that the mere odor or sight of supposed marijuana, without additional factors or indicia, constituted probable cause, prior to the November 13, 2023 arrests of Plaintiff Lee and Plaintiff Pierre, described herein.

54. Between approximately 2019 until at least November 13, 2023, in Mecklenburg County District and Superior Courts, legal challenges (*e.g.*, motions to suppress) were litigated in cases wherein CMPD officers claimed that their reasonable suspicion and/or probable cause

justifications relied on only the odor or sight of marijuana, without any other indicia of criminality or criminal activity.

55.     Between approximately 2019 until at least November 13, 2023, in Mecklenburg County District and Superior Courts, legal challenges (*e.g.*, motions to suppress) were litigated in cases wherein CMPD officers would acknowledge that they could not distinguish the difference between legal hemp and illegal marijuana based on odor alone.

56.     Between approximately 2019 until at least November 13, 2023, in Mecklenburg County District and Superior Courts, legal challenges (*e.g.*, motions to suppress) were litigated in cases wherein CMPD officers would acknowledge that they were aware of, among other things, the guidance and direction from the NC SBI's 2019 memo and CMPD's Police Attorney's Office's 2021 legal guidance bulletin.

57.     Although the City of Charlotte knew or reasonably should have known that in the wake of legislative changes, guidance from NC SBI, and/or guidance from CMPD's Police Attorney's Office in 2021, "odor only" was insufficient to constitute probable cause in cases involving suspected marijuana, its officers were nonetheless using that sole justification to support stopping, seizing, searching, and/or arresting individuals in Charlotte between approximately 2019 until at least November 13, 2023.

### Policing, Race, and Marijuana Arrests in Charlotte

58.     In 2021, the City of Charlotte contracted with the RAND Corporation to evaluate its policing. The City of Charlotte undertook this effort "[a]s part of ongoing efforts to improve policing standards and procedures."[2]

---

[2] Molly S. Simmons et al., *SAFE Charlotte*, RAND CORP., at iii (2021), https://www.rand.org/content/dam/rand/pubs/research_reports/RRA1300/RRA1355-1/RAND_RRA1355-1.pdf [https://perma.cc/4PQ4-YVJB].

59. On September 28, 2021, the RAND Corporation produced a report, "SAFE Charlotte: Alternative Response Models and Disparities in Policing," for the City of Charlotte. The RAND report analyzed data from CMPD about traffic stops, arrests, uses of force, and the result of searches for contraband, from 2015 through 2020.[3]

60. Among the findings by the RAND Corporation were that Black residents in Charlotte were more likely to be stopped both as a pedestrian and a driver and, when stopped, were more likely to experience "use of force" as well as more likely to be arrested by CMPD. For example, the report's Black drivers were nearly two times as likely to be arrested during a stop as whites, and nearly two times as likely to experience a use of force by CMPD.[4]

61. The report found that, among other things:

   a. The rate at which Black motorists were stopped was two to three times higher than the rate at which white motorists were stopped. This finding was not explained by the characteristics of the neighborhood, like crime rates, where the stop took place.[5]

   b. Black pedestrians were stopped at much higher rates than white, Asian, and Hispanic pedestrians by CMPD. This finding was not explained by the characteristics of the neighborhood, like crime rates, where the stop took place.[6]

   c. Black motorists were asked to consent to a CMPD search at much higher rates than white motorists were.[7]

---

[3] *Id.* at 40-86.

[4] *Id*. at 50.

[5] *Id.* at 52-53.

[6] *Id*. at 53-54.

[7] *Id.* at 60.

62. The findings contained in the 2021 RAND report were not materially different from previous studies that found statistically significant racial disparities in various aspects of CMPD's policing practices. For example:

a. A 2015 study that examined 1.3 million stops made over 12 years by CMPD determined, among other things, that Black drivers in Charlotte are searched at twice the rate of white drivers.[8]

b. A 2019 analysis by WCNC Charlotte found that from 2019 through May 2020, Black men accounted for approximately 33% of all traffic stops by CMPD, compared with white men constituting 22% of traffic stops. Of the Black men stopped by CMPD during this period, CMPD searched 10% of them compared to 3% of the white men they pulled over. The analysis further showed that Black men made up 62% of all people arrested during traffic stops, while white men constituted 18% of those arrested.[9]

c. According to data provided by CMPD, between January 1, 2016, and December 31, 2023, CMPD arrested approximately 332 people where misdemeanor marijuana possession was the only charge. Over 81% of those people were identified as Black.[10]

63. Upon information and belief, between 2019 and at least November 13, 2023, CMPD officers used "odor only" as justification to stop, seize, search, and/or arrest numerous individuals, and that police practice was marked by statistically significant racial disparities.

---

[8] Frank R. Baumgartner, Derek Epp & Kelsey Shoub, *Analysis of Black-White Differences in Traffic Stops and Searches in Charlotte, NC, 2002-2013*, UNIV. OF N.C. AT CHAPEL HILL, at 4 tbl. 3 (2015), https://fbaum.unc.edu/TrafficStops/Reports2014/Charlotte-Report.pdf [https://perma.cc/BYU8-JXBD].

[9] *See* Nate Morabito, *CMPD continues to stop, search and arrest black men disproportionately*, WCNC CHARLOTTE: INVESTIGATIONS (June 8, 2020 at 6:35pm ET), https://www.wcnc.com/article/news/investigations/cmpd-continues-to-stop-search-and-arrest-black-men-disproportionately/275-80ca07f1-f00a-480b-8de1-e017f256d358 [https://perma.cc/9XRU-UFY3].

[10] Public Records Request Number PRR-1093-2024 from City of Charlotte, fulfilled on Oct. 27, 2025 (on file with undersigned counsel).

**Events of November 13, 2023**

*The Unlawful Arrests of Anthony Lee and Christina Pierre*

64.     Around 2:00 p.m. on November 13, 2023, Mr. Lee and Ms. Pierre were sitting on a bench at a bus stop in front of a Bojangles near South Tryon Street and Arrowood Road in Charlotte, Mecklenburg County, North Carolina.

65.     Mr. Lee and Ms. Pierre had just finished working their respective shifts at Bojangles and were waiting for the bus.

66.     As Mr. Lee and Ms. Pierre sat on a bench, they shared a hemp cigarette that they had previously purchased at a store in Charlotte that sold legal hemp products.

67.     At the same time, Officers Wilson and Kludy were driving in a marked CMPD patrol vehicle at the intersection of South Tryon Street and Arrowood Road.

68.     According to CMPD's own internal investigation, Officers Wilson and Kludy, while driving their patrol car inbound on South Tryon Street, claimed to smell what they believed to be the odor of marijuana in the area of the bus stop where Plaintiff Lee and Pierre were seated.

69.     Traffic camera footage made publicly available by CMPD shows the distance between the patrol car and the bench where Mr. Lee sat, as Officers Wilson and Kludy drove down South Tryon Street:[11]

---

[11] Charlotte-Mecklenburg Police, *Steele Creek Arrest- Lee/Pierre- November 13, 2023- 12*, at 5:35 (YouTube, Dec. 8, 2023), https://www.youtube.com/watch?v=m6WogrM0Joc.



[Figure 1: Screenshot from traffic camera footage, superimposed arrow indicating CMPD patrol car.]

70. Officer Wilson and Officer Kludy turned off of South Tryon Street and parked their patrol car.

71. Officers Wilson and Kludy approached Plaintiff Lee and Pierre, who were both sitting at the bus stop, on foot.

72. A significant portion of the subsequent interactions between Officers Wilson and Kludy and Plaintiff Lee and Pierre was captured on bodyworn camera ("BWC") footage produced by the City of Charlotte, which is publicly available on YouTube and incorporated by reference here. *See* Charlotte-Mecklenburg Police, *Steele Creek Arrest- Lee/Pierre- November 13, 2023- 16* (YouTube, Dec. 8, 2023), https://www.youtube.com/watch?v=g1L8wDmask8.

73. According to that BWC footage produced by the City of Charlotte, Officer Kludy initiated contact with Lee and Pierre by asking, "What's up guys? Y'all just hanging out?" *Id.* at 0:33-0:36.

16

74. According to that BWC footage produced by the City of Charlotte, Mr. Lee answered, "We just got off of work." *Id.* at 0:37.

75. According to that BWC footage produced by the City of Charlotte, Ms. Pierre then asked the officers, "What did we do wrong?" *Id.* at 0:40.

76. According to that BWC footage produced by the City of Charlotte, Officer Wilson stated, "It smelled like you're smoking weed." *Id.* at 0:42.

77. According to that BWC footage produced by the City of Charlotte, Mr. Lee and Ms. Pierre attempted to explain to the officers that they were smoking lawfully purchased and possessed hemp. "This is stuff from the store. It's sold in the store. It's THCA," Mr. Lee said. *Id.* at 0:43-0:48.

78. According to that BWC footage produced by the City of Charlotte, without acknowledging Mr. Lee's explanation, Officer Wilson stated: "You're smoking weed? You guys smoking weed?" *Id.* at 0:48.

79. According to that BWC footage produced by the City of Charlotte, Mr. Lee responded, "It comes from the store." *Id.* at 0:50.

80. According to that BWC footage produced by the City of Charlotte, Officer Wilson said, "Well, I can smell it coming from that," gesturing towards the hemp cigarette in Pierre's hand. *Id.* at 0:52.

81. According to that BWC footage produced by the City of Charlotte, Ms. Pierre tried to explain further: "We got it from the smoke shop." *Id.* at 0:54.

82. According to that BWC footage produced by the City of Charlotte, in response to hearing, again, that the substance being smoked had been purchased from a smoke shop, Officer Wilson grabbed Mr. Lee's arm. *Id.* at 0:57.

83. According to that BWC footage produced by the City of Charlotte, while grabbing Mr. Lee's arm, Officer Wilson said, "Okay, well, alright, do me a favor and put your hand behind your back," and placed Mr. Lee under arrest. *Id.* at 0:57.

84. According to that BWC footage produced by the City of Charlotte, within 25 seconds of initiating contact, Officer Wilson had grabbed Mr. Lee's arm to place handcuffs on him. *Id.* at 0:33-0:58.

85. Prior to grabbing Mr. Lee's arm, neither Officer Kludy nor Officer Wilson asked a single follow-up question in response to the information they had learned: that according to Mr. Lee and Ms. Pierre, the substance in question was hemp and had been purchased at a "smoke shop."

86. Officer Kludy then grabbed Ms. Pierre's arm and pulled her off the bench. According to the BWC footage produced by the City of Charlotte, Ms. Pierre is heard repeatedly asking, "Whoa, whoa, whoa, what are you doing? What are you doing?" *Id.* at 0:59-1:03.

87. According to the BWC footage produced by the City of Charlotte, as Officer Kludy continued to forcibly grab Ms. Pierre, Mr. Lee, who was seated on the bench, asked Officer Wilson, "Will you stop? We just got off of work. Why am I being detained?" *Id.* at 1:03-1:08.

88. According to the BWC footage produced by the City of Charlotte, Mr. Lee then stated, "I just told you that they sell it in the store; why am I being detained?" *Id.* at 1:09-1:13.

89. According to the BWC footage produced by the City of Charlotte, Officer Wilson responded to Mr. Lee by commanding, "Turn around now or you're going to get tased, do you hear me?" *Id.* at 1:13-1:16.

90. According to the BWC footage produced by the City of Charlotte, Officer Wilson then pulled Mr. Lee from the bench to the ground.

91. According to the BWC footage produced by the City of Charlotte, Officer Kludy proceeded to aggressively pull and yank on Ms. Pierre, ultimately slamming her to the ground.

92. Within minutes, additional CMPD officers arrived at the scene.

93. One of the officers to arrive at the scene was Officer Vincent Pistone.

94. According to CMPD's own investigation, Officer Pistone then delivered seven (7) knee strikes and ten (10) hammer fists against Ms. Pierre.

95. While being aggressively restrained by Officer Wilson, Officer Konnor Lott, and, for a period of time, Officer Pistone, Mr. Lee watched helplessly as CMPD officers violently assaulted and restrained Ms. Pierre.

96. Mr. Lee also watched helplessly as Officer Pistone kneed and punched Ms. Pierre.

97. Mr. Lee repeatedly asked the CMPD officers why this was happening to them.

98. Ms. Pierre repeatedly screamed for help.

***Booking and Processing***

99. Officer Wilson and Officer Kludy initially transported Mr. Lee and Ms. Pierre to holding rooms at the CMPD Steele Creek Division precinct.

100. While in a CMPD holding room, Mr. Lee told a CMPD Sergeant that he did not understand why he was arrested for possessing a substance he purchased from a store. According to BWC footage produced by the City of Charlotte, Mr. Lee said: "I'm just saying that there, it's called human rights. There's the constitution … I don't understand how you have a city that sells cannabis-like products that smell like it, so that means that you're stopping everybody that smells like weed." Charlotte-Mecklenburg Police, *Steele Creek Arrest-*

*Lee/Pierre- November 13, 2023- 13*, at 44:52-45:11 (YouTube, Dec. 12, 2023), https://www.youtube.com/watch?v=lC_GeGsgDT4&t=734s.

101. After processing at the Steele Creek precinct was completed, CMPD officers eventually transported Mr. Lee and Ms. Pierre to the Mecklenburg County Detention Center.

102. According to BWC footage produced by the City of Charlotte, during the processing at the Mecklenburg County Detention Center, Defendants conceded that "CBD's legal down here." Charlotte-Mecklenburg Police, *Steele Creek Arrest- Lee/Pierre- November 13, 2023- 6*, at 50:29 (YouTube, Dec. 12, 2023), https://www.youtube.com/watch?v=qZeCspZVBCU.

103. According to BWC footage produced by the City of Charlotte, Mr. Lee noted, "It all smells the same," to which Defendants' responded: "Correct. So as law enforcement, it is not our burden to figure out if it's CBD, it's yours in court." *Id.* at 50:48-50:56.

104. Mr. Lee was subsequently charged with three misdemeanors: Possession of Marijuana (<½ oz.), Resisting Public Officer, and Carrying a Concealed Gun.

105. Ms. Pierre was subsequently charged with three misdemeanors: Possession of Marijuana (<½ oz.), Resisting Public Officer, and Assault on a Government Official.

106. On November 27, 2023, the Mecklenburg District Attorney's Office voluntarily dismissed all criminal charges against Mr. Lee and Ms. Pierre. The prosecution's stated reasons were as follows: "After consideration of the body-worn camera evidence and the various recorded accounts of police and civilian witnesses present, based on the totality of the circumstances, the State does not have a reasonable likelihood of success at any potential trial on this matter."

107. Several bystanders, including Mr. Lee and Ms. Pierre's Bojangles coworkers, witnessed the altercation. Some recorded it with their cellphones and uploaded videos to various social media platforms.

108. BWC footage depicts some of the crowd of bystanders:[12]



[Figure 2: Screenshot from BWC footage.]

109. In the aftermath of the November 13, 2023, events, Mr. Lee's name, image, and his harrowing, upsetting, and humiliating experience were covered on a regular basis by local news, as well as on national media platforms (*e.g.*, CNN, Fox News).

### *The City of Charlotte's Response to Events of November 13, 2023*

110. In the aftermath of the November 13, 2023, events, CMPD continued to make false and misleading claims about Mr. Lee and Ms. Pierre.

---

[12] Charlotte-Mecklenburg Police, *Steele Creek Arrest- Lee/Pierre- November 13, 2023- 26*, at 7:50 (YouTube, Dec. 12, 2023), https://www.youtube.com/watch?v=UfZcbjrh6cU.

Case 3:26-cv-00605    Document 1    Filed 07/27/26    Page 21 of 41

111. For example, on December 12, 2023, CMPD posted a video on its YouTube channel that it created concerning the incident. *See* Charlotte-Mecklenburg Police, *Critical Incident Briefing- Steele Creek Arrest- Lee/Pierre- November 13, 2023* (YouTube, Dec. 12, 2023), https://www.youtube.com/watch?v=TNY1XUYkLk8. The video, titled "CMPD Critical Incident Briefing," was also widely shared with media outlets. The video is nine (9) minutes and eight (8) seconds long, and narrated by Lieutenant Kevin Pietrus from CMPD Public Affairs. During the video, multiple false and misleading claims were made by Pietrus on behalf of CMPD. These false and misleading statements included, but were not limited to, the following:

    a. That Officer Kludy's grabbing of Ms. Pierre was intended to "deescalate her interference," when the evidence makes clear that Officer Kludy escalated the situation. *Id.* at 2:16.

    b. That Mr. Lee "remained uncooperative with one officer," when the evidence makes clear that Plaintiff Lee was entirely cooperative. *Id.* at 2:35.

    c. That Officer Kludy "struck Ms. Pierre in the face in response to Ms. Pierre's repeated assaults on the officer," when the evidence makes clear that Ms. Pierre did not repeatedly assault Officer Kludy. *Id.* at 3:22.

    d. That "[t]he substances that were recovered from Mr. Lee and Ms. Pierre were tested by the CMPD Crime Lab. Analysis showed that the substances were marijuana," when the analysis done by CMPD merely showed the presence of THC and did not establish that there was at least 0.3% concentration of delta-9 THC. *Id.* at 8:02.

22

112.     CMPD coordinated the release of its misleading video with an op-ed by then-CMPD Chief Johnny Jennings in the *Charlotte Observer*.[13] In his op-ed, Chief Jennings asserted several falsehoods, including the following:

   a. "[T]he officers had probable cause to make the arrest," when, in fact, the officers did not have probable cause to arrest Plaintiff for possessing marijuana.[14]

   b. "The substances located on the male subject tested positive for marijuana," when, in fact, the analysis done by CMPD merely showed the presence of THC and did not establish that there was at least 0.3% concentration of delta-9 THC.[15]

113.     Chief Jennings also voiced his displeasure and disagreement with the decision by the Mecklenburg County District Attorney's Office to voluntarily dismiss all pending charges against Mr. Lee and Ms. Pierre.

114.     As noted above, prior to November 13, 2023, CMPD did not have testing instruments available that could distinguish if a substance was marijuana or hemp. The testing procedures used by CMPD on the substances seized from Mr. Lee involved gas chromatography-mass spectrometry (GC-MS), which did not distinguish the concentration of delta-9 THC.

115.     Because the legal difference between marijuana and hemp in North Carolina in November 2023 was determined by the concentration of delta-9 THC, not simply the presence of THC, Defendants knew, or should have known, that Chief Jennings' claim was false.

---

[13] Johnny Jennings, *CMPD chief: 'Context is crucial' before you judge Steele Creek incident*, CHARLOTTE OBSERVER (Dec. 12, 2023 at 4:35pm ET), https://www.charlotteobserver.com/opinion/article282967353.html [https://perma.cc/5TFZ-SV3X].

[14] *Id.*

[15] *Id.*

116.     After the Mecklenburg County District Attorney's Office voluntarily dismissed the pending charges against Mr. Lee and Ms. Pierre, and while CMPD's internal affairs investigation was ongoing, the Charlotte City Council convened a closed session on December 11, 2023, to review all available BWC footage related to the arrests of Mr. Lee and Ms. Pierre, pursuant to a judicial order authorizing disclosure.[16]

117.     During that session, Councilmember Renée Johnson provided visual demonstrations to educate her colleagues about hemp products, passing around a legal THCA pre-rolled cigarette and a bag of hemp flower that she lawfully purchased from a local retailer. Councilmember Johnson explained that the demonstration illustrated the indistinguishability of legal hemp and illegal marijuana and the urgent need for policy guidance.[17] As WFAE News reported, "'There's no way to tell,' Johnson said. 'The CBD flower looks exactly like marijuana or so I've heard. I don't think there is any way to tell because of the smell.'"[18] Johnson emphasized that the Council "need[s] to have that discussion because it helps our officers as well."[19]

118.     Then-Mayor Pro Tem Braxton Winston agreed, remarking that it is "practically impossible for officers to discern the molecular structures of what someone is smoking" and

[16] *See* Mary Calkins, *City Council to view body cam footage from controversial CMPD arrest*, WBTV NEWS (Dec. 11, 2023 at 5:53am ET), https://www.wbtv.com/2023/12/11/city-council-view-body-cam-footage-controversial-cmpd-arrest/ [https://perma.cc/RM72-FAVF].

[17] *See* Steve Harrison, *Charlotte City Council member passes around a 'legal joint' in closed session*, WFAE NEWS (Dec. 18, 2023 at 3:24pm ET), https://www.wfae.org/politics/2023-12-18/charlotte-city-council-member-passes-around-a-legal-joint-in-closed-session [https://perma.cc/NQL7-92B7].

[18] Steve Harrison, *Violent arrests show Charlotte's struggles to adapt as legal, intoxicating cannabis flourishes*, WFAE NEWS (Nov. 21, 2023 at 4:12pm ET), https://www.wfae.org/crime-justice/2023-11-21/violent-arrests-show-charlottes-struggles-to-adapt-as-legal-intoxicating-cannabis-flourishes [https://perma.cc/QN5G-MAW6].

[19] *Id.*

that the City of Charlotte "needs to go a different way" in responding to the challenges created by hemp legalization.[20]

119.    Councilmember Ed Driggs similarly observed that the incident revealed "a real problem in a sense of a disconnect between the letter of the law and the practical reality," noting that "[police officers] can't attack every instance of this. It's arguably legal....So I think that's a fair question."[21]

120.    At the conclusion of its session, the City Council did not adopt any formal resolution, directive, or ordinance addressing CMPD's continued reliance on the supposed odor or appearance of marijuana as the sole basis to stop, search, seize, and/or arrest someone.

121.    Despite the City Council's inaction on that day, Defendants had previously acknowledged, and advised CMPD staff, that "[d]ue to the legalization of hemp and hemp extract (cannabidiol (CBD)) products in North Carolina and the fact that hemp, CBD and marijuana cannot be distinguished from one another without chemical analysis, [CMPD] Officers will need additional evidence beyond the sight or smell of marijuana to establish probable cause (PC)." Ex. 2, CMPD Law Bulletin, Summer 2021, at 6.

***Mr. Lee Suffers a Second Arrest***

122.    In April 2024, nearly five months after the Mecklenburg County District Attorney's Office voluntarily dismissed all pending charges from the November 13, 2023 incident, CMPD issued a Warrant for Arrest for Possession of a Stolen Firearm against Mr. Lee.

---

[20] *Id.*

[21] *Id.*

123. Mr. Lee first learned of the warrant for his arrest in July 2024, a full eight months after the November 13, 2023, incident, during a background check with a potential employer.

124. On July 29, 2024, Mr. Lee turned himself in to the Mecklenburg County Jail with Ms. Pierre present.

125. Mr. Lee was officially rearrested and charged with two counts of Possession of a Stolen Firearm, criminal case numbers 24CR246863 and 24CR292732.

126. Defendants only recovered one gun during Mr. Lee's unlawful arrest and subsequent unlawful search on November 13, 2023.

127. Mr. Lee spent the night in jail after the magistrate refused to set a bond on the untrue grounds that Mr. Lee was rearrested "while on pretrial release for other charges," pursuant to G.S. 15A-533(h).

128. Mr. Lee had no pending charges in July 2024.

129. The following morning, July 30, 2024, a Mecklenburg County District Court Judge modified Mr. Lee's bond to an unsecured $2,500 bond.

130. Lee was released later that day after being unlawfully incarcerated for 30 hours.

131. On August 13, 2024, the Mecklenburg County District Attorney's Office voluntarily dismissed Mr. Lee's two charges of Possession of a Stolen Firearm that had been initiated by Defendants.

132. Upon voluntarily dismissing the charges on August 13, 2024, the Mecklenburg County District Attorney's Office wrote as follows: "There is insufficient evidence to prove that the defendant knew or had reasonable grounds to believe the firearm was stolen. The defendant made no admissions concerning the firearm. The doctrine of recent possession also does not apply due to the firearm being reported stolen in November 2022, found on the

defendant's person in November 2023 and not discovered stolen by CMPD until February 2024."

***Mr. Lee Has Suffered Significantly Due to the Events Described Herein***

133. Defendants' acts and omissions described herein caused months of severe mental, emotional, and financial hardship for Mr. Lee, the grandson of a 30+ year NYPD police officer, a former TSA employee, and someone with no criminal record.

134. In the aftermath of his unlawful arrest, Mr. Lee's employment was interrupted multiple times. His professional and personal reputation suffered. His relationship with Ms. Pierre was significantly strained.

135. To this day, Mr. Lee continues to experience intense emotional and mental harm stemming from the traumatic events of his arrest.

## CLAIMS FOR RELIEF

### FIRST CLAIM

**Violation of 42 U.S.C. § 1983 for False Arrest Under the Fourth Amendment**
**(Against Officer Wilson and Officer Kludy)**

136. Plaintiff realleges and incorporates by reference all preceding paragraphs as if set forth herein.

137. Officer Wilson and Officer Kludy are "persons," as that term is used in the text of 42 U.S.C. § 1983.

138. Plaintiff brings this claim against Officer Wilson and Officer Kludy in their individual capacities as police officers with CMPD.

139. This claim is brought pursuant to 42 U.S.C. § 1983 for violation of rights protected by the Fourth Amendment. A false arrest claim under the Fourth Amendment

requires evaluating whether the officer had objective probable cause for the arrest based on "the totality of the circumstances known to the officer at the time of the arrest." *United States v. Al-Talib*, 55 F.3d 923, 931 (4th Cir. 1995).

140. At the time he arrested Plaintiff Lee, Officer Wilson did not have objective probable cause to justify the arrest.

141. Officer Wilson did not have a warrant for the arrest.

142. Plaintiff did not resist, delay, or obstruct Officer Wilson under N.C.G.S. § 14-223.

143. Officer Wilson nevertheless arrested Plaintiff despite the lack of objective probable cause and without any legal justification, constituting an unreasonable seizure and false arrest under the Fourth Amendment.

144. At the time he arrested Plaintiff Lee, Officer Kludy did not have objective probable cause to justify the arrest.

145. Officer Kludy did not have a warrant for the arrest.

146. Plaintiff did not resist, delay, or obstruct Officer Kludy under N.C.G.S. § 14-223.

147. Officer Kludy nevertheless arrested Plaintiff despite the lack of objective probable cause and without any legal justification, constituting an unreasonable seizure and false arrest under the Fourth Amendment.

148. Plaintiff did not possess marijuana in violation of N.C.G.S. § 90-95.

149. The subsequent search of Plaintiff and his possessions was conducted incident to the unlawful arrest, and was thus unreasonable and unlawful.

150. As a direct and proximate result of this conduct, Plaintiff suffered an unlawful arrest, search, detention, loss of wages, emotional pain, psychological suffering, and

28

humiliation. He seeks compensatory damages and all other damages permitted by law for the injuries he suffered.

151. Plaintiff also seeks costs and attorneys' fees to the extent allowed by law, including pursuant to 42 U.S.C. § 1988.

## SECOND CLAIM

### False Arrest
### (Against Officer Wilson, Officer Kludy, and the City of Charlotte)

152. Plaintiff realleges and incorporates by reference all preceding paragraphs as if set forth herein.

153. Plaintiff brings this claim against Officer Wilson and Officer Kludy in their individual capacities and in their official capacities as police officers with CMPD.

154. At the time of his actions as alleged herein, Officer Wilson was acting as an employee and agent of CMPD and the City of Charlotte, and within the course and scope of his official employment with those entities. Officer Wilson was on duty and was assigned to carry out his lawful duties, which he failed to do.

155. At the time of his actions as alleged herein, Officer Kludy was acting as an employee and agent of CMPD and the City of Charlotte, and within the course and scope of his official employment with those entities. Officer Kludy was on duty and was assigned to carry out his lawful duties, which he failed to do.

156. At the time he arrested Plaintiff, Officer Wilson did not have objective probable cause to justify the arrest.

157. Officer Wilson did not have a warrant for the arrest.

158. Plaintiff did not possess marijuana in violation of N.C.G.S. § 90-95.

159.     Plaintiff did not resist, delay, or obstruct Officer Wilson under N.C.G.S. § 14-223.

160.     Officer Wilson nevertheless arrested Plaintiff despite the lack of objective probable cause and without any legal justification, constituting a false arrest under state law.

161.     The subsequent search of Plaintiff and his possessions was conducted incident to the unlawful arrest, and was thus unreasonable and unlawful.

162.     The conduct of Officer Wilson and Officer Kludy was unreasonable, deliberate, grossly negligent, wanton, willful, done with conscious or reckless disregard for the rights and safety of others, and exceeded the scope of their lawful authority.

163.     The conduct of Officer Wilson and Officer Kludy proximately and directly caused the foreseeable physical and emotional harms suffered by Plaintiff.

164.     Plaintiff also brings this claim against the City of Charlotte as the principal of its agents, Officer Wilson and Officer Kludy, under *respondeat superior*. The City has waived immunity for this claim and for claims brought against it that arise from the conduct of its agents who, like Officer Wilson and Officer Kludy here, act within the scope of their employment.

165.     Plaintiff seeks and is entitled to recover compensatory damages in excess of twenty-five thousand dollars ($25,000) for the above-described conduct, and all other damages permitted by law from Officer Wilson, Officer Kludy, and the City of Charlotte.

### THIRD CLAIM

**Violation of 42 U.S.C. § 1983 for Use of Excessive Force
Under the Fourth and Fourteenth Amendment
(Against Officer Wilson and Officer Kludy)**

166.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if set forth herein.

167. Officer Wilson and Officer Kludy are "persons," as that term is used in the text of 42 U.S.C. § 1983.

168. Plaintiff brings this claim against Officer Wilson and Officer Kludy in their individual capacities as police officers with CMPD.

169. This claim is brought pursuant to 42 U.S.C. § 1983 for violation of rights protected by the Fourth Amendment and the Fourteenth Amendment to the United States Constitution. Specifically, this claim is brought under the Fourth Amendment, which applies to the actions of Officer Wilson and Officer Kludy under the Fourteenth Amendment.

170. The actions of Officer Wilson described herein constituted the unlawful use of excessive force under color of law. The force used against Plaintiff by Officer Wilson was also objectively unreasonable.

171. The actions of Officer Wilson described herein were taken under color of state law and are thus actionable pursuant to 42 U.S.C. § 1983.

172. As a direct and proximate result of Officer Wilson's conduct, Plaintiff suffered physical pain and humiliation. Accordingly, Plaintiff seeks and is entitled to recover compensatory damages.

173. The actions of Officer Kludy described herein constituted the unlawful use of excessive force under color of law. The force used against Plaintiff by Officer Wilson was also objectively unreasonable.

174. The actions of Officer Kludy described herein were taken under color of state law and are thus actionable pursuant to 42 U.S.C. § 1983.

175. As a direct and proximate result of Officer Kludy's conduct, Plaintiff suffered physical pain and humiliation. Accordingly, Plaintiff seeks and is entitled to recover compensatory damages.

176. As a direct and proximate result of this conduct, Plaintiff suffered emotional pain, psychological suffering, and humiliation. He seeks compensatory damages and all other damages permitted by law for the injuries he suffered.

177. Plaintiff also seeks costs and attorneys' fees to the extent allowed by law, including pursuant to 42 U.S.C. § 1988.

## FOURTH CLAIM

### Assault and Battery
### (Against Officer Wilson, Officer Kludy, and the City of Charlotte)

178. Plaintiff realleges and incorporates by reference all preceding paragraphs as if set forth herein.

179. Plaintiff brings this claim against Officer Wilson and Officer Kludy in their individual capacities and in their official capacities as police officers with CMPD.

180. At the time of his actions as alleged herein, Officer Wilson was acting as an employee and agent of CMPD and the City of Charlotte, and within the course and scope of his official employment with those entities. Officer Wilson was on duty and was assigned to carry out his lawful duties, which he failed to do.

181. At the time of his actions as alleged herein, Officer Kludy was acting as an employee and agent of CMPD and the City of Charlotte, and within the course and scope of his official employment with those entities. Officer Kludy was on duty and was assigned to carry out his lawful duties, which he failed to do.

182. The conduct of Officer Wilson and Officer Kludy was unreasonable, deliberate, grossly negligent, wanton, willful, done with conscious or reckless disregard for the rights and safety of others, and exceeded the scope of their lawful authority.

183. The conduct of Officer Wilson and Officer Kludy proximately and directly caused the foreseeable physical and emotional harms suffered by Plaintiff.

184. Plaintiff also brings this claim against the City of Charlotte as the principal of its agents, Officer Wilson and Officer Kludy, under *respondeat superior*. The City has waived immunity for this claim and for claims brought against it that arise from the conduct of its agents who, like Officer Wilson and Officer Kludy here, act within the scope of their employment.

185. Plaintiff seeks and is entitled to recover compensatory damages in excess of twenty-five thousand dollars ($25,000) for the above-described conduct, and all other damages permitted by law from Officer Wilson, Officer Kludy, and the City of Charlotte.

## FIFTH CLAIM

### Violation of 42 U.S.C. § 1983 for Malicious Prosecution
### Under the Fourth Amendment
### (Against Officer Wilson and Officer Kludy)

186. Plaintiff realleges and incorporates by reference all preceding paragraphs as if set forth herein.

187. Officer Wilson and Officer Kludy are "persons," as that term is used in the text of 42 U.S.C. § 1983.

188. Plaintiff brings this claim against Officer Wilson and Officer Kludy in their individual capacities as police officers with CMPD.

189. This claim is brought pursuant to 42 U.S.C. § 1983 for violation of rights protected by the Fourth Amendment.

190. The actions of Officer Wilson and Officer Kludy described herein were taken under color of state law and are thus actionable pursuant to 42 U.S.C. § 1983.

191. Officer Wilson and Officer Kludy initiated charges against Plaintiff for possession of marijuana up to ½ ounce, in violation of N.C.G.S. § 90-95, as well as resisting public officer, in violation of N.C.G.S. § 14-223.

192. But as described above, these charges were not supported by probable cause.

193. Officer Wilson and Officer Kludy knew this fact but nevertheless initiated, instituted, and participated in pursuing these charges; and in doing so, their actions were malicious and evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiff's constitutional rights.

194. The criminal proceedings terminated in favor of Plaintiff when these charges stemming from his encounter with Officer Wilson and Officer Kludy on November 13, 2023 were dismissed on November 27, 2023.

195. This malicious prosecution caused serious injuries to Plaintiff.

196. Plaintiff seeks compensatory damages and all other damages permitted by law for the injuries he suffered.

197. Plaintiff also seeks costs and attorneys' fees to the extent allowed by law, including pursuant to 42 U.S.C. § 1988.

## SIXTH CLAIM

## Malicious Prosecution
### (Against Officer Wilson, Officer Kludy, and the City of Charlotte)

198. Plaintiff realleges and incorporates by reference all preceding paragraphs as if set forth herein.

199. Plaintiff brings this claim against Officer Wilson and Officer Kludy in their individual capacities and in their official capacities as police officers with CMPD.

200. At the time of his actions as alleged herein, Officer Wilson was acting as an employee and agent of CMPD and the City of Charlotte, and within the course and scope of his official employment with those entities. Officer Wilson was on duty and was assigned to carry out his lawful duties, which he failed to do.

201. At the time of his actions as alleged herein, Officer Kludy was acting as an employee and agent of CMPD and the City of Charlotte, and within the course and scope of his official employment with those entities. Officer Kludy was on duty and was assigned to carry out his lawful duties, which he failed to do.

202. Officer Wilson and Officer Kludy initiated charges against Plaintiff for possession of marijuana up to ½ ounce, in violation of N.C.G.S. § 90-95, as well as resisting public officer, in violation of N.C.G.S. § 14-223.

203. But as described above, these charges were not supported by probable cause.

204. Officer Wilson and Officer Kludy knew this fact but nevertheless initiated, instituted, and participated in pursuing these charges; and in doing so, they acted with malice.

205. The criminal proceedings terminated in favor of Plaintiff when these charges stemming from his encounter with Officer Wilson and Officer Kludy on November 13, 2023 were dismissed on November 27, 2023.

206. The conduct of Defendants was unreasonable, deliberate, grossly negligent, wanton, willful, done with conscious or reckless disregard for the rights and safety of others, and exceeded the scope of their lawful authority.

207. The conduct of Defendants proximately and directly caused the foreseeable harms suffered by Plaintiff.

208. Plaintiff also brings this claim against the City of Charlotte as the principal of its agents, Officer Wilson and Officer Kludy, under *respondeat superior*. The City has waived immunity for this claim and for claims brought against it that arise from the conduct of its agents who, like Officer Wilson and Officer Kludy here, act within the scope of their employment.

209. Plaintiff seeks and is entitled to recover compensatory damages in excess of twenty-five thousand dollars ($25,000) for the above-described conduct, and all other damages permitted by law from Officer Wilson, Officer Kludy, and the City of Charlotte.

## SEVENTH CLAIM
### Violation of 42 U.S.C. § 1983 Against the City of Charlotte
### for Failure to Train
### (Against the City of Charlotte)

210. Plaintiff realleges and incorporates by reference all preceding paragraphs as if set forth herein.

211. Plaintiff brings this claim against the City of Charlotte under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978).

212. The conduct of Officer Wilson and Officer Kludy, described above, resulted in the deprivation of Plaintiff's federal constitutional rights.

36

213. The City of Charlotte had a duty to adequately and effectively train Officer Wilson and Officer Kludy.

214. The City of Charlotte breached these duties, and its failure to train its officers constituted deliberate indifference to Plaintiff's constitutional rights.

215. Upon information and belief, well before the November 13, 2023 incident described above, the City of Charlotte knew or should have known that, in light of the legalization of hemp, CMPD needed to train its officers accordingly, to wit: because hemp and marijuana cannot be distinguished from one another without chemical analysis, CMPD officers need additional evidence beyond the mere sight or smell of marijuana to establish probable cause.

216. In light of the change in the law and directives provided by the North Carolina State Bureau of Investigation and legal counsel for CMPD, as well as the duties and responsibilities assigned to Officer Wilson and Officer Kludy, the need for more or different training was obvious. The inadequacies of the training were so obvious and likely to result in the violation of constitutional rights described above that the City of Charlotte's actions and omissions constituted deliberate indifference to the need and/or a conscious choice on the part of policymaking officials to disregard constitutional rights.

217. In addition and/or in the alternative, the City of Charlotte failed to correct a pattern of unconstitutional conduct occurring before November 13, 2023, relating to CMPD officers' use of the supposed odor or sight of marijuana as sole justification to stop, seize, search, and/or arrest people. The City of Charlotte had actual or constructive knowledge that the unconstitutional conduct was occurring and violating the rights of others, but was deliberately indifferent to the need to train.

218. The City of Charlotte's failure to adequately train CMPD officers was a proximate cause and the moving force behind the violations of Plaintiff's rights as set forth herein.

219. The actions complained of were taken under color of state law and are thus actionable pursuant to 42 U.S.C. § 1983.

220. As a direct and proximate result of this conduct, Plaintiff suffered an unlawful arrest, search, detention, prosecution, loss of wages, emotional pain, psychological suffering, and humiliation.

221. Plaintiff seeks compensatory damages and all other damages permitted by law for the injuries he suffered.

222. Plaintiff also seeks costs and attorneys' fees to the extent allowed by law, including pursuant to 42 U.S.C. § 1988.

## EIGHTH CLAIM

### Violation of 42 U.S.C. § 1983 Against the City of Charlotte
### for Ratification
### (Against the City of Charlotte)

223. Plaintiff realleges and incorporates by reference all preceding paragraphs as if set forth herein.

224. Plaintiff brings this claim against the City of Charlotte under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978).

225. The conduct of Officer Wilson and Officer Kludy, described above, resulted in the deprivation of Plaintiff's federal constitutional rights.

226. The City of Charlotte knew, or had constructive knowledge, that its officers were continuing to violate the constitutional rights of people who were innocently possessing and/or consuming lawful hemp, and sanctioned that behavior.

227. The City of Charlotte further ratified the actions taken by Officer Wilson and Officer Kludy, acting at the direction of CMPD, to violate the rights of Plaintiff.

228. The actions complained of were taken under color of state law and are thus actionable pursuant to 42 U.S.C. § 1983.

229. As a direct and proximate result of this conduct, Plaintiff suffered an unlawful arrest, search, detention, prosecution, loss of wages, emotional pain, psychological suffering, and humiliation.

230. Plaintiff seeks compensatory damages and all other damages permitted by law for the injuries he suffered.

231. Plaintiff also seeks costs and attorneys' fees to the extent allowed by law, including pursuant to 42 U.S.C. § 1988.

### NINTH CLAIM

**Violation of 42 U.S.C. § 1983 Against the City of Charlotte
for Unofficial Custom, Policy, or Practice
(Against the City of Charlotte)**

232. Plaintiff realleges and incorporates by reference all preceding paragraphs as if set forth herein.

233. Plaintiff brings this claim against the City of Charlotte under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978).

234. The conduct of Officer Wilson and Officer Kludy, described above, resulted in the deprivation of Plaintiff's federal constitutional rights.

39

235. The City of Charlotte adhered to an unofficial custom, policy, or practice to show deliberate indifference towards the rights of people who were innocently possessing and/or consuming lawful hemp.

236. Despite knowing that innocent people were being unlawfully stopped, detained, and arrested based on the possession and/or consumption of lawful hemp, the City of Charlotte, by and through CMPD, permitted this unofficial custom, policy, or practice to persist.

237. The actions complained of were taken under color of state law and are thus actionable pursuant to 42 U.S.C. § 1983.

238. As a direct and proximate result of this conduct, Plaintiff suffered an unlawful arrest, search, detention, prosecution, loss of wages, emotional pain, psychological suffering, and humiliation.

239. Plaintiff seeks compensatory damages and all other damages permitted by law for the injuries he suffered.

240. Plaintiff also seeks costs and attorneys' fees to the extent allowed by law, including pursuant to 42 U.S.C. § 1988.

## JURY DEMAND

241. Plaintiff requests that all issues be tried before a jury of his peers.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following judgment:

A. An Order finding in favor of Plaintiff on all causes of action alleged herein;

B. The grant of any reasonable request to amend Plaintiff's Complaint to conform to the discovery and evidence obtained in this lawsuit;

C.  Compensatory damages;

D.  An award of attorneys' fees and costs and expenses;

E.  Any other appropriate relief available in law or equity; and

F.  Such other and further relief as this Court may deem just, equitable, or proper.


Dated: July 27, 2026        Respectfully submitted,

/s/ Jacob H. Sussman
Jacob H. Sussman
NC Bar No. 31821
jsussman@scsj.org

/s/ Janki Kaneria
Janki Kaneria
NC Bar No. 54879
janki@scsj.org

/s/ Dominique Erney
Dominique Erney
NC Bar No. 62345
dominique@scsj.org

**SOUTHERN COALITION FOR SOCIAL JUSTICE**
P.O. Box 51280
Durham, NC 27717
Tel: 704-277-3962

*Counsel for Plaintiff Anthony Lee*